Approved: _____   Original
        MATTHEW J. KING
        Assistant United States Attorney

Before:   THE HONORABLE KATHARINE H. PARKER
           United States Magistrate Judge
           Southern District of New York   **21 MAG 7300**

- - - - - - - - - - - - - - - - - - x
                                 :   **Sealed Complaint**
UNITED STATES OF AMERICA      :
                                 :   Violations of
        - v. -                   :   18 U.S.C. §§ 1951,
                                 :   924(c)(1), and 2.
JOSE CABRERA and              :
JUAN TEPI,                       :   COUNTY OF OFFENSE:
                                 :   BRONX
              Defendants.  :
- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

    JOHN KACZOR, being duly sworn, deposes and says that he is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF"), and charges as follows:

**COUNT ONE**
(Hobbs Act Robbery)

    1.  On or about March 12, 2021, in the Southern District of New York and elsewhere, JOSE CABRERA and JUAN TEPI, the defendants, unlawfully and knowingly did commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, CABRERA and TEPI robbed a laundromat in the Bronx, New York.

    (Title 18, United States Code, Sections 1951(a) and 2.)

**COUNT TWO**
(Conspiracy to Commit Hobbs Act Robbery)

    2.  On or about March 12, 2021, in the Southern District of New York and elsewhere, JOSE CABRERA and JUAN TEPI, the defendants, and others known and unknown, unlawfully and

knowingly did combine, conspire, confederate, and agree together and with others known and unknown to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, CABRERA and TEPI agreed to rob a laundromat in the Bronx.

(Title 18, United States Code, Section 1951.)

### COUNT THREE
(Use of a Firearm)

3.   On or about March 12, 2021, JOSE CABRERA and JUAN TEPI, the defendants, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the Hobbs Act robbery charged in Count One of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, and did aid and abet the use, carrying, and possession of a firearm, which firearm was brandished during the robbery charged in Count One of the Complaint.

(Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4.   I am a Special Agent with the ATF, and I have been involved in the investigation of the above-described offenses. I am familiar with the facts and circumstances set forth below based on my review of pertinent documents, and from my conversations with fellow law enforcement officers.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.   As set forth in greater detail below, on or about March 12, 2021, JOSE CABRERA and JUAN TEPI, the defendants, committed a robbery at a laundromat (the "Laundromat") in the Bronx.  During the course of the robbery, CABRERA brandished a firearm and hit a laundromat attendant (the "Employee") in the

head with that firearm.  CABRERA and TEPI then fled the scene on foot.  The evidence against CABRERA and TEPI includes, among other things, surveillance video footage, see infra ¶¶ 6, 8, photographs of CABRERA and TEPI, see infra ¶ 8, and cellphone and historical cell site records, see infra ¶ 9-11.

     6.    Based on my conversations with New York City Police Department ("NYPD") Officers, my review of NYPD reports, and my review of surveillance videos from the Laundromat and surrounding buildings, I have learned, in substance and in part, the following:

         a.    On or about March 12, 2021, around 7:04 p.m., two men later identified as JOSE CABRERA and JUAN TEPI, the defendants, see infra ¶ 8, entered the premises of the Laundromat.  CABRERA, the taller of the two, was wearing a black Champion hooded sweatshirt with black pants, black sneakers, and a surgical mask.  TEPI, the shorter of the two, was also wearing dark colored clothing, including a Nike hooded sweatshirt, a black face mask, black pants, and black sneakers with some grey coloring in them.  TEPI was also carrying a large duffle bag with an unknown white insignia on the side.

         b.    On the same day, between approximately 7:04 p.m. and 9:30 p.m., CABRERA and TEPI remained in and around the area of the Laundromat.

         c.    Then, at approximately 9:30 p.m., CABRERA and TEPI returned to the Laundromat dressed in the same clothing.  While inside the Laundromat, CABRERA took out a firearm and struck the Employee in the head, knocked the Employee down to the floor, and forced the Employee to a room at the rear of the Laundromat.  At about the same time, TEPI walked over to what appears to be the Laundromat's office area and unlocked a door to the office.  CABRERA then went inside the office area while TEPI held the Employee in the rear room.  Approximately two minutes later, CABRERA emerged from the office area carrying a large black bag clearly filled with something, which he placed inside a laundry cart.

         d.    At approximately 9:36 p.m. that same night, TEPI exited the Laundromat with the laundry cart containing the black bag.  CABRERA left the Laundromat shortly thereafter.

     7.    Based on my review of NYPD records documenting an interview with the owner of the Laundromat, I have learned, in

substance and in part, that approximately $1,500 was stolen from the Laundromat on the night of the robbery.

8. Based on my review of surveillance video footage recovered from the Laundromat and buildings near the Laundromat as well as photographs of JOSE CABRERA and JUAN TEPI, the defendants, I have learned, in substance and in part, the following:

   a. Around 7:09 p.m. on the evening of the robbery, the two men ("Suspect-1" and "Suspect-2") who robbed the Laundromat were captured on video surveillance footage from a building near the Laundromat. In that video footage, Suspect-1, the taller of the two men, can be seen wearing the same black hooded sweatshirt, black pants, and black sneakers that he is wearing on the video surveillance footage from inside the Laundromat. He is also wearing a blue surgical mask, but it is pulled down below his chin revealing his face. Suspect-2, the shorter of the two, is also wearing the same dark-colored clothing.

   b. Based on my comparison of an NYPD photograph of JOSE CABRERA, the defendant, with still images of Suspect-1 taken from surveillance video footage on the day of the Robbery, I believe that they depict the same person and that Suspect-1 is CABRERA.

   c. Similarly, after Suspect-2 left the scene of the robbery, he was captured on video surveillance footage approximately a block and a half away from the Laundromat. In that video surveillance footage, at approximately 9:47 p.m., Suspect-2 is seen carrying the same overstuffed black laundry bag with white insignia that he had left the Laundromat with approximately ten minutes earlier. While he appears to have removed his mask and hooded sweatshirt, he is still wearing the same discernable dark pants and black sneakers with grey coloring. His face is visible in this footage.

   d. Based on my comparison of an NYPD photograph of JUAN TEPI, the defendant, with still images of Suspect-2 taken from surveillance video footage on the day of the Robbery, I believe that they depict the same person and that Suspect-2 is TEPI.

9. Based on my review of law enforcement reports and my conversation with law enforcement officers and others, I have learned, in substance and in part, the following:

4

       a.   Prior to the robbery, on or about March 11, 2021, JOSE CABRERA, the defendant, reported his car stolen to the NYPD.  During the 911 call concerning his stolen vehicle, CABRERA provided a particular cellphone number ("Cellphone-1") to the NYPD as his call back number.

       b.   After the robbery, on April 7, 2021, law enforcement officials met with a member of JUAN TEPI's, the defendant's, family ("Family Member-1") concerning the robbery.  During that interview, Family Member-1 gave the law enforcement officials TEPI'S phone number ("Cellphone-2").

   10.   Based on my review of phone records for Cellphone-1 and Cellphone-2, I have learned, in substance and in part, the following:

       a.   Cellphone-1 and Cellphone-2 communicated well over 100 times between February 24, 2021 and March 25, 2021.

       b.   On March 12, 2021, the date of the robbery, Cellphone-1 and Cellphone-2 communicated several times prior to the time of the robbery.

   11.   Based on my review of historical cell site data for the call numbers associated with Cellphone-1 and Cellphone-2, I have learned, in substance and in part, that from at or about 7:50 p.m. until at least at or about 9:50 p.m. on or about March 12, 2021, Cellphone-1 and Cellphone-2 appear to have been located in the vicinity of the Laundromat.

   WHEREFORE, the deponent respectfully requests that JOSE CABRERA and JUAN TEPI, the defendants, be arrested, and that they be imprisoned or bailed, as the case may be.

```
                              /s/ John Kaczor
                         _____
                              JOHN KACZOR
                              Special Agent
                              Bureau of Alcohol, Tobacco, Firearms
                              and Explosives
```

Sworn to before me by reliable electronic means, pursuant to Federal Rule of Criminal Procedure 4.1, <u>22 </u>th day of July 2021

*Katharine H. Parker*
_____
HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York